*FILED*

*Aug 10   3 51 PM '04*

*U.S. DISTRICT COURT*
*NEW HAVEN COURT*
*CONN.*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEPHEN CESLIK,                          :    Civil Action No.
                                         :    3:03 CV 0450(DJS) *MRK*
            Plaintiff,                   :
      vs.                                :
                                         :
BARBERINO BROTHERS, INCORPORATED         :
                                         :
            Defendant                    :    August 10, 2004


### DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY CORLETO & ASSOCIATES

The Defendant, BARBERINO BROTHERS ("Barberino") by its attorneys, Corleto & Associates, P.C., submits this opposition to plaintiff's motion to disqualify this firm as counsel.

As outlined more fully herein, Ceslik's argument shows nothing more than disputed issues of fact and law, the resolution of which will require a trial. Even assuming arguendo that a violation occurred, which is not conceded, plaintiff's application ignores the precept that the rule violation is addressable by disciplinary process before the grievance committee and that they are not to be invoked as procedural weapons. (Rules of Professional Conduct, Scope). Further, to grant the relief sought by Ceslik at this late stage would subvert the rules and work an injustice upon the defendant.

<u>RELEVANT FACTS/PROCEDURAL HISTORY</u>

Ceslik commenced the prerequisite administrative action by filing a complaint at the Connecticut Commission of Human Rights and Opportunities ("CHRO") on June 20, 2001, alleging that defendant, Barberino Brothers violated the Federal Age Discrimination and Employment Act of 1967 (29 U.S.C. 621 et seq.) ("ADEA"), by not hiring him on or about April 13, 2001. On January 24, 2003 CHRO issued a Release to Sue. On March 11, 2003, Ceslik commenced this action, alleging essentially the same claims advanced at the CHRO.

By Order dated January 26, 2004, trial was scheduled to commence in June 2004. On June 14, 2004, Defendant submitted a "Proposed Joint Pre-Trial Memorandum" to Plaintiff's counsel Leonard McDermott. In response, counsel advised that he was withdrawing from the case and that Ceslik would proceed pro-se. Attorney McDermott's motion to withdraw expressly stated that, "plaintiff insists on pursuing an objective that [plaintiff's counsel] finds repugnant and imprudent. Plaintiff has asked that this attorney file a Motion to Disqualify the opposing counsel in a 123 page document sent to this attorney dated June 3, 2004." (See, Exhibit "A").

2

Subsequently, on June 28, 2004, this firm received plaintiff's Motion to Disqualify Corleto & Associates, near the eve of trial. Not to make Attorney McDermott a witness, but it clearly seems that Mr. Ceslik feels a need to control the system rather than to participate.

After a number of discovery failures by Ceslik, the defendants moved, on November 13, 2003, for an order to compel and preclude. The court's January 26, 2004 order effectively precluded Mr. Ceslik from serving discovery demands or from conducting depositions of the defendants. A deadline of May 1, 2004 was set for dispositive motions. What becomes evident is that Mr. Ceslik uses this motion to disqualify as a vehicle to advance what may be charitably described as his view of the facts, beyond the deadline for dispositive motions.

<u>STANDARD OF REVIEW</u>

The American Bar Association's Code of Professional Responsibility is recognized as providing appropriate guidelines for the bar's professional conduct, and accordingly, for resolving questions of disqualification. See, e.g., <u>Funds of Funds, Ltd. vs. Arthur Anderson & Company</u>, 567 F.2d 225, 227 (2d Cir. 1977).

Motions to disqualify opposing counsel are viewed with disfavor, in part because courts are reluctant to separate a client from his chosen attorney. The Second Circuit has cautioned courts not to grant motions to disqualify counsel indiscriminately, because of the serious and immediate adverse affect of denying the client his choice of counsel. Board of Ed. v. Nyquist, 590 F.2d 1241 (2d Cir. 1979); Society for Good Will to Retarted Children, Inc. v. Carey, 446 F. Supp. 722, 724 (E.D.N.Y. 1979).

Recognizing that a motion to disqualify is often a harassment technique, See Board of Ed. v. Nyquist, 590 F.2d 1241, 1246 (2d Cir., 1979) it is frequently held that a party may not disqualify opposing counsel merely by declaring them a witness. See Coyler, et al v. Larry Smith, et al, 50 F.Supp.2d 966, 974 (1999). Thus, a party seeking disqualification carries a heavy burden and must meet a high standard of proof before a lawyer is disqualified. Evans v. Artek Systems Corp., 715 F.2d 788, 794 (2d. Cir. 1983). Thus, courts have taken a restrained approach, calling for disqualification only upon a finding that a particular attorney's presence at trial will taint the case. Bottaro v. Hatton Associates, 680 F.2d 895, 896 (2d Cir. 1982).

Accordingly, in considering a motion to disqualify, the court must balance the defendant's interest in counsel of his choice, the

4

need to maintain the highest standards of the profession. Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir., 1978).

## LEGAL ARGUMENT

In Oliver Stone fashion, Mr. Ceslik hypothesizes that the defendants and their counsel engaged in "18 lies", violating Rule 1.2(d)'s proscription against counseling or assisting a client in criminal or fraudulent conduct, and Rule 3.3(a)'s proscription against making false statements under oath. Mr. Ceslik urges the court to issue an order of disqualification, arguing that our firm's continued representation of his adversary will result in continued Rules violations (Rule 1.16(a)), and that counsel will be required to testify as a witness at trial (Rule 3.7(a)).

As will be shown, Ceslik at most points out disputed questions of fact, many of which are expressly framed around pleading allegations and responses. His argument, that this firm has counseled its client to engage in criminal or fraudulent conduct, is a specious supposition based on creative juxtapositioning of events and statements out of context.

Mr. Ceslik's attempt to control this proceeding by dismissing his own counsel and moving to disqualify opposing counsel is the

5

latest in what appears to be a quixotic crusade against the legal system.    As illustrated in the Corleto Affidavit, in prior litigation against a partner, Mr. Ceslik dismissed his attorney 4 years into the litigation. (See, Corleto Affidavit, ¶5 thereto and Exhibit "D" annexed thereto, pgs. 58-62).    More troubling, when Ceslik brought an (unrelated) administrative action against a former employer, the Used Car Warehouse of Milford, he sought to disqualify the CHRO investigator, (Roxanne Sinclair) and to bring disciplinary charges against her. (See, Corleto Affidavit, Ceslik Deposition, Exhibit "D", pg.23, 1.13-21 and pg.63-66)

In any event, each of Mr. Ceslik's allegations will be addressed herein.

**FIRST LIE: EMPLOYMENT REFERENCES**

Ceslik first alleges that the August 8, 2001 response to his CHRO complaint wrongly states that Barberino's manager, Mike Bosta, received adverse references from a previous employer.    In support Ceslik cites his unsworn handwritten transcript of a 5/7/02 CHRO fact finding conference, quoting Bosta "that is incorrect. . . I never contacted his employers", and arguing that the quote belies Barberino's position about Ceslik's adverse references.

This firm requested from the CHRO a transcript from the May 7, 2002 fact finding conference.    Although CHRO did not transcribe the

6

hearing, they provided a cassette-tape recording of the hearing. Upon receipt, we forwarded same to Brandon Smith Reporting Services to be transcribed.  All documents related to procurement of the transcript and the transcript itself are annexed to the Corleto Affidavit as part of Exhibit "B".

Barberino's response to CHRO Schedule "A" (Corleto Affidavit, Exhibit "C") at pg.7, #15 , states in pertinent part,

> "Mr. Leon Gjione, formerly of Colonial Toyota in Milford, CT can be reached at Westport Lexus at (203) 255-1351. Mr. Gjione will confirm that he advised Mr. Bosta that Stephen Ceslik was not eligible for rehire at Colonial Toyota.  Accordingly, Mr. Ceslik received a negative recommendation from a previous employer which influenced Mr. Bosta's decision not to hire him at Barberino."

(See, Corleto Affidavit, Exhibit "C", No. 15)

The answer did not state that Bosta personally contacted Ceslik's previous employer.  CHRO investigator, Susan Hom, paraphrased the response as follows:

> Q:  In Respondent's answer Basta stated he contacted Ceslik's previous dealership and they gave Steve bad recommendations.
>
> A:  That is incorrect.

(See, Corleto Affidavit, Exhibit "B", pg.83).

In fact, additional testimony sheds further light about Bosta's knowledge of Ceslik, through Ed Mealey, from prior employment affiliation:

7

A:   That's, yeah, what happened was I was running the store across the street from Colonial Toyota - -

Q:   About what year?

A:   That was 2000. It was between February of 2000 and I would say June of 2000. And Ed Mealey at the time I believe wanted to hire - - I had made Ed Mealey a sales manager underneath me, okay, because I was running the store.

Q:   So from February to June of 2000?

A:   Yes.

Q:   Okay.

A:   I had promoted Ed Mealey from salesman to sales manager, and Ed Mealey had brought up - -

Q:   What were you to the Warehouse?

A:   I was like the general manager, general sales manager.

Q:   Okay.

A:   Ed Mealey had expressed that he wold like to hire Steve Ceslik and - - I'm trying to remember, I said to him, well - - and then he, Ed Mealey, also expressed that there had been a problem or something had happened or he had previously worked there. I said, well, all previous employees are going to have to go through the owner, so, you know, do what you got to do.

Q:   Um-hum.

A:   And that's when I found out the Ed came back and told me that he was not eligible for rehire. But I had never met Mr. Ceslik nor had I ever spoken to him, nor did I know about what the nature of his

> problem was because I was too busy getting the store going.
>
> Q:    Okay.  So it wasn't until Ed came back and informed you that the Complainant was not eligible for rehire that you were made aware of that.
>
> A:    Right.   And I didn't go any further with him because I wasn't preoccupied with that situation.
>
> Q:    Okay.  And so you really didn't know anything about Mr. Ceslik other than that he wasn't eligible for rehire at Colonial.
>
> A:    No.

(See, Corleto Affidavit, Exhibit "B", pg.58, 1.3-25, pg.59, 1.1-20).

Accordingly, the representation was accurate and Bosta addressed the CHRO honestly stating that he did not contact Ceslik's previous employer.

Further, Barberino never stated that Bosta was solely in charge of employment decisions.  Rather, as stated in Item Number 9 of Barberino's August 8, 2001 response to Ceslik's CHRO complaining affidavit, "Mr. Bosta is not solely responsible both for interviewing and hiring of all employees at Barberino's..." (See, Corleto Affidavit, Exhibit "C").

Finally, a review of the transcript from the 5/7/02 CHRO hearing shows that Ceslik grossly misrepresents Bosta's response and completely takes it out of context.  (See Corleto Affidavit,

9

Exhibit "B", pg.83, l. 4-10). Bosta clearly stated that he did not contact Ceslik's former employers, but that he learned of Ceslik's reputation while employed at Toyota Certified (formerly Colonial Toyota), where he was told that Ceslik was not eligible for rehire.

## SECOND LIE: EMPLOYMENT AT COLONIAL TOYOTA

Ceslik next claims that this firm "lied" by stating in response to the CHRO Schedule A that Ceslik "applied for a job at Colonial." The written CHRO response stated in its entirety:

> "Mr. Ceslik applied for employment at Colonial Toyota in Milford, Connecticut at the time that Barberino sales manager, Mike Bosta was also employed at Colonial. While at Colonial Mr. Bosta, was advised by his superiors that Mr. Ceslik was not eligible for rehire."

(See, Corleto Affidavit, Exhibit "C", pg.5, No. 12(d)).

Ceslik compares Bosta's oral response to Investigator Hom's question at fact finding. When asked whether Ceslik applied for a job at Colonial with Bosta, Bosta responded, "no, absolutely not."

The written response was imprecise. It was clarified orally at the fact finding.

Investigator Hom specifically observed that this response was clarified:

> "I think that he clarified that. He said that what came out during the course of that questioning was that when Mr. Mealey worked for him in Used Car Warehouse or the

10

Certified Toyota, he had recommended that you be hired, Mr. Ceslik.  He didn't know you specifically at that time, but he had referred Mr. Mealey back to the superiors, the owners I guess or the management at Toyota Colonial only to find out that you are ineligible for rehire, okay I think that was the point."

(See, Corleto Affidavit, Exhibit "B", pg.74, 1. 21-25 and pg.75, 1. 1-8).

It is becoming abundantly clear that Ceslik cannot simply accept adverse findings through proper administrative and judicial process.  He is in fact attempting to control the system for his own specious gain.

### THIRD LIE: ED MEALEY

Ceslik next claims that Bosta lied about another Barberino employee's, Ed Mealey's (coincidentally, a friend of Ceslik), attempt to get Ceslik a job at Toyota Certified.  Ceslik compares Bosta's testimony at the CHRO fact finding with Ed Mealey's testimony that: (1) He (Mealey) was unaware that Ceslik applied for employment at Colonial Toyota while Bosta was employed at Colonial; and (2) that he does not believe that Ceslik and Bosta were concurrently employed at Colonial.

The transcript lacks any inquiry of Mealey about whether he attempted to get Ceslik a job at Toyota Certified.  Thus, there is no testimony by Mealey to corroborate or refute Bosta's testimony

11

about Mealey's attempts to get Ceslik a job at Toyota Certified. Mealey's testimony that Ceslik did not apply for employment at Toyota Certified and that Bosta and Ceslik were not concurrently employed at Toyota Certified does not answer the question of whether Mealey attempted to get Ceslik a job at Toyota Certified.

## FOURTH LIE: PERJURY BY VERIFICATION

Ceslik asserts that Thomas Barberino perjured himself by executing a verification attesting that he had personal knowledge, and then not attending the CHRO fact finding.

It is clear on its face that Thomas Barberino's verification did not attest to personal knowledge but rather that he knew the contents of the Response to the CHRO complaint and that the response was true to the best of his knowledge.

Ceslik misconstrues the verification in an attempt to create inconsistency where none exists.

## FIFTH LIE: PERJURY BY MIKE BOSTA

Ceslik argues that Bosta: (i) perjured himself by testifying that he gave Ceslik an interview; and (ii) admitting that he lied. Ceslik cites Bosta's 5/7/02 CHRO testimony:

> "I believe I did call him in for an interview...no I
> didn't call him in for an interview.  He called me, I
> believe I'm not sure."

(See, Corleto Affidavit, Exhibit "B", pg. 54, 1. 1-3).

Asked when he interviewed Ceslik, Bosta responded that he saw Ceslik when Ceslik filled out an application.  He told Ceslik that there were two people in front of him and that if Ceslik wanted to wait he could.  (See Corleto Affidavit Exhibit "B", pg.54, 1.20-25 and pg.55, 1.1-3).  Bosta admitted that he did not follow up with an actual interview after initially meeting Ceslik on April 13, 2001. Bosta clearly testified that he had a poor recollection about minute events which occurred over a year before his testimony. Bosta clearly used the word "interview" to describe his brief meeting with Ceslik.   When asked whether he granted an actual formal interview, Bosta again clearly testified that he did not. (See, Corleto Affidavit, Exhibit "B", pg.54, 1.13-14).

Bosta's inability to recall in detail all minute events transpiring a year prior is understandable.  His attempt to recall events and the natural inconsistencies that arise therefrom do not amount to a lie.

13

***SIXTH LIE: BOSTA RE: JOB INTERVIEW***

Please see above "fifth lie".


***SEVENTH LIE: BOSTA RE: JOB INTERVIEW***

Please see above "fifth lie".


***EIGHTH LIE: RECORDKEEPING PRACTICES***

Ceslik's allegation that Bosta lied about Barberino's application procedure is again based on statements taken out of context. Bosta testified that, to his knowledge, there is no set policy for handling applications, and that he believes Barberino does not retain records of individuals not hired. Bosta further testified that his knowledge of this matter is limited as another employee, Manny Gonzalez, is in charge of personnel records. (See, Corleto Affidavit, Exhibit "B", pg. 80, l. 11-25).    Plaintiff again attempts to create the appearance of inconsistency where none exists, by misquoting Bosta's testimony.

Although there is clearly no adequate record before the court, at most, Ceslik creates an issue of fact as to whether Barberino complied with federal regulations for retention of records pertaining to job applicants. Bosta's lack of knowledge thereof is

14

not dispositive.   It would seem fair to conclude that, if there were a real issue, the CHRO would have acted upon it.

### NINTH LIE: OTHER INTERVIEWS

Ceslik next claims that, at the CHRO hearing, Bosta "manufactured" a story about interviewing a saleswoman over the age of forty, arguing that Bosta could not have known her age because the job application did not ask for date of birth.

Ceslik again relies on his own inaccurate, uncertified, manual transcription, which includes his comments, suggesting that Bosta "stuttered" and "paused" in an apparent attempt to paint a negative picture of Bosta.  (See, Plaintiff's Exhibit "D", bottom of pgs. 15 and 25).

In fact, the hearing transcript (Corleto Affidavit, Exhibit "B") fails to suggest that Mr. Bosta stuttered or paused during his response.  (See, Corleto Affidavit, Exhibit "B", pg. 82, l. 13-20).

Moreover, Bosta's testimony is again consistent.   Bosta testified that he is generally not aware of interviewee's ages, that he does not recall how many individuals he hired, and that he generally has a low turnover rate.   (See, Corleto Affidavit, Exhibit "B", pg. 63, l.9-25).  That Bosta later testified about calling back a woman over the age of forty says nothing more than

15

he, as do most of us, can approximate an individual's age based on visual characteristics.

In any event, Bosta testified that the application does not call for an applicant's date of birth, so he is uncertain. No follow-up questions were asked about the basis of Bosta's belief as to the woman's age.

Plaintiff's attack on Bosta's veracity is reprehensible. Once again, plaintiff attempts to distort the truth by creating inconsistency where none exists.

**TENTH LIE: THE EMPLOYER**

Ceslik minces words to argue that because the written CHRO response identifies Bosta, Barberino's employee, as an "equal opportunity employer", Barberino tried to distance itself from responsibility and "hide the fact that Bosta was acting as Barberino's agent."

Clearly our reference to Bosta as an "employer" highlights his role as an agent of Barberino Brothers, intricately involved in making employment decisions. The term "equal opportunity" referred to Bosta's hiring reputation.

Whether Bosta, as Barberino's agent, was an equal opportunity employer is the crucial issue being debated in this case. It is a

16

legal issue which is appropriately resolved at trial, not in a motion to disqualify this firm.

### ELEVENTH LIE: PLEADING RESPONSE RE: ADVERTISEMENT

Ceslik's argument that Barberino lied by denying knowledge about the content of their advertisement is ill-founded. Barberino answered an allegation of the complaint by denying knowledge of the advertisement as stated by Plaintiff.

The advertisement read in its entirety: "Seeking six top performers in sales. No experience needed. We will pay you, while you train." (See, Plaintiff's Exhibit J.1). Ceslik's allegations at paragraph 6 of the complaint, extracted a portion of the advertisement from its context: "Seeking six top performers" and omitted the experience qualifier "no experience needed". Ceslik argues that Barberino advertised for individuals with significant experience. The advertisement in its entirety conveyed a different meaning.

Obviously, taken out of context and in light of the claims herein, Barberino could not admit the allegation. If any issue were to be taken up, presumably Attorney McDermott would have done so. Plainly, a motion to disqualify is not the proper vehicle to debate this factual issue.

17

**TWELFTH LIE: PLEADING RESPONSE RE: CESLIK'S APPLICATION**

Defendant admits that Ceslik filled out an application dated April 13, 2001. However, defendant had no personal knowledge as to where or exactly when this application was filled out. Accordingly, defendant only admitted that Ceslik filled out an application.

Ceslik conveniently omits that portion of Bosta's CHRO testimony, that he did not recall the exact date Ceslik filled out his application. (See, Corleto Affidavit, Exhibit "B", pg. 54 1. 23-25 and pg. 55, l. 1-12). Ceslik again attempts to create inconsistency where none exists, and inexcusably attempts to mislead this court by omitting relevant testimony.

**THIRTEENTH LIE: PLEADING ALLEGATION RE: CESLIK'S APPLICATION**

Defendant admitted that plaintiff was not granted an interview but denied knowledge or information of the remainder of the allegations based on the form of the allegation. As stated, the allegation could be inferred in many ways including: (1) Mr. Bosta accepted plaintiff for employment; or (2) the application was physically accepted on April 13, 2001. As previously stated, defendant has no personal knowledge as to where or exactly when the application was filled out or accepted. In the context of a

18

responsive pleading, it was entirely appropriate to deny knowledge or information in response to an allegation for which several meanings could be attached.

**FOURTEENTH LIE: PLEADING ALLEGATION RE: CESLIK INTERVIEW**

Bringing the ridiculous to the sublime, Ceslik takes issue with the fact that adverse counsel is not in a position to attest to the completeness and accuracy of his surreptitiously taped telephone calls. Again, in the context of a responsive pleading, it was entirely appropriate to deny knowledge about an allegation entirely and solely within the pleader's knowledge.

**FIFTEENTH LIE: PLEADING ALLEGATION RE: CESLIK'S AGE**

Allegations and states of knowledge as to individual applicant's ages have already been addressed in response to the ninth allegation regarding Bosta's interview of a saleswoman over the age of forty. The allegation as to defendant's state of knowledge of plaintiff's age was properly denied. As Mr. Ceslik has already pointed out, the application did not call for disclosure of age or date of birth.

That information about Mr. Ceslik's age may have been learned in the administrative proceeding is of no moment. For purposes of

19

the operative facts governing this case, at the relevant time, defendant had no knowledge of Mr. Ceslik's age.

### SIXTEENTH LIE: PLEADING ALLEGATION RE: HIRING PRACTICES

In his most bizarre turn, Ceslik now complains because the defendant admits hiring a younger person.

Clearly, the issue in this case is not whether a younger person was hired but whether Mr. Ceslik was not hired based on his age.

Plaintiff's 03/11/03 Complaint alleges that since April, 2001, defendant only interviewed and hired people who were substantially younger than Ceslik.

Again, as a matter of proper form, the allegation could not be admitted, as it includes the absolute qualifier "only" and a vague reference to individuals "substantially younger" than Ceslik. Further, at the time of the answer, the defendant had knowledge that it hired individuals <u>not</u> "substantially younger" than Ceslik.

Perhaps had Mr. Ceslik not defaulted and been the subject of an order precluding him from seeking discovery, further information would have been adduced tending to prove or disprove the allegation. To collaterally attack the allegation in this fashion is beyond the pale.

20

**SEVENTEENTH LIE: BOSTA'S OPINION**

Ceslik inexcusably misquotes Mike Bosta claiming that in a telephone conversation, Bosta said he was looking for people with "no experience." Fortunately, Ceslik provided the tape that he surreptitiously made. We have had it transcribed. The transcript is annexed to the Corleto Affidavit as Exhibit "E".

As can be clearly seen, Bosta told Ceslik that he was looking for "inexperienced people." Bosta explained that "a lot of times you get sales people that have bad habits, but that's not always necessarily true. I mean I'd have to sit down and speak with you." (See Exhibit "E", pg. 3, l. 8-11).

Bosta's actual statement clearly reflects his general opinion and impression of those who have been employed in automobile sales. It also reflects his recognition that some have good habits from their experience.

In any event, Bosta's statement is entirely consistent with Barberino's advertisement "no experience needed."

21

*EIGHTEENTH LIE: PLEADING ALLEGATION RE: CESLIK'S EXPERIENCE*

Lastly, plaintiff again tries to take issue with proper denial of a pleading allegation based on its form. Clearly, the defendant is not in a position to admit plaintiff's self-serving statements about his experience and any awards or accolades he claims to have garnered during prior employment.

In any event, the allegation of a lie is belied by Bosta's CHRO testimony on May 7, 2002, to the effect that Ceslik "told [him] of all his certifications and his accolades" during a conversation. (See, Corleto Affidavit, Exhibit "B", pg.55, l.25 and pg.56, l.1-4). Contrary to Ceslik's current argument, this seemed to suggest that these documents weren't attached to the application.

CONCLUSION

This court is presented with a motion to disqualify counsel based solely on misstatements of fact, omissions of material testimony, conjecture and mischaracterizations. As shown above, it is yet the latest in Mr. Ceslik's attempt to control the system.

22

The motion is clearly baseless and, in the words of Ceslik's former counsel, "repugnant and imprudent."

For the reasons stated herein, defendant respectfully asks the court to deny plaintiff's motion.

Respectfully submitted,

THE RESPONDENT
BARBERINO BROTHERS, INCORPORATED

By: _____
Anthony R. Corleto, Esq. (CT 13520)
CORLETO & ASSOCIATES, P.C.
107 Mill Plain Road, Suite 200
Danbury, CT 06811
(203)790-7540

23

## CERTIFICATION

It is hereby certified that a copy of the foregoing **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO DISQUALIFY CORLETO & ASSOCIATES** was *Delivered by Courier and* mailed postage pre-paid, to all counsel of record, pro se parties of record and non appearing parties on August 13 , 2004 as follows:

Mr. Stephen Ceslik
478 Milford Point Rd. Apt. A
Milford, CT 06460




_____
Anthony B. Corleto


T:\Lex0114CT\Suit\pld.26.wpd