UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN CESLIK | CIVIL ACTION NO. |
| Plaintiff | 3:03 CV 0450 (MRK) |
| v. | |
| BARBERINO BROTHERS, INC. | OCTOBER 22, 2004 |
| Defendant | |

**RESPONSE TO OPPOSITION TO MOTION FOR EXTENSION OF TIME**

Attorney Corleto has filed an Opposition to Motion for Extension of Time dated October 18, 2004. The Opposition is premised on two arguments. One is that the plaintiff has appeared pro se in other matters and the other is that the plaintiff's medical condition has been the basis for previous delays.

Addressing the second issue, I have numerous chronic conditions, including high blood pressure. I don't know why Attorney Corleto is so surprised that a <u>chronic condition</u> persists and remains a factor in my ability to prepare for trial. Attorney Corleto seems to be analogizing this "excuse" to, for example, a death in the family, which may be a one-time reason for a delay. A chronic illness is entirely different, and mine is substantiated by the doctor's note. All the notes attached to Attorney Corleto's Opposition serve to verify that I have serious chronic conditions. His argument is that since a chronic

condition impacted the timing of other matters, I should not be allowed to "use" that reason again. He pretends to misunderstand the word "chronic." Attorney Corleto is not a medical doctor and is in no position to challenge, without any authority, the conclusions of Dr. Klugman's, who has been treating me since 2000.

With regard to my appearing pro se, I would first observe that I have never previously appeared pro se in federal court. Also, the various cases which are the subject of the attachments to Attorney Corleto's are misleading. In his Exhibit A, referring to a case 22 years ago, I was in fact represented by Attorney John Luckart. The exhibit then refers to a case 14 years ago, in which I was represented by Attorney Charles Eggert, Attorney Vincent Amendola and two other attorneys whose names I forgot. When I ran out of money to pay them after about 4 years, I proceeded pro se. In the third case cited, a personal injury case, I was in fact represented by Attorney Robert Nicola. The next page of the transcript, omitted by Attorney Corleto, so states. It is true that I filed for bankruptcy in 1996 without a lawyer, for what that is worth. Nothing in Exhibit A suggests that I have extensive pro se experience that would put me on equal footing with experienced trial lawyers in preparing my first litigation in federal court. This is another example of Attorney Corleto's attempt to deceive the court, this time by not disclosing that many of the cases he claims I handled pro se were in fact handled by attorneys, a fact that he knows.

Dated at Milford, CT this October 22, 2004.

                                                THE PLAINTIFF

                                                Stephen Ceslik, PRO SE
                                                478 Milford Point Road
                                                Milford, CT 06460
                                                (203) 874-2523

## CERTIFICATION

This will certify that I mailed a copy of the foregoing motion and the attachments to the following on October 22, 2004:

Corleto & Associates, P.C.
107 Mill Plain Road, Suite 200
Danbury, CT 06811-6100

                                                Stephen Ceslik, Pro Se

This page omitted by Corleto in his obj.

Q An individual?
A I think it was a corporation.
Q Who was your attorney?
A Howard Owen's office. Howard Owens.
Q What town is Mr. Owen's office in?
A That's the one I couldn't tell you before where Richard Johnson is located. It's Howard Owens in Trumbull, Connecticut on Silver Lane. But I was represented by Nicola, Attorney Nicola.
Q First name?
A Bob Nicola.
Q Nicola or O?
A (Witness nods negatively.)
Q You don't know?
A No, I don't know.
Q Okay. Is that case resolved?
A It was resolved a long time ago.
Q Did you get a cash settlement out of it?
A Yeah. We were about ready to go to court and it was settled, yeah.
Q And how much did you get for that cash settlement?
A I think there was an agreement settlement on it signed. It's standard.
Q Which court was this case pending in?