UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEPHEN CESLIK, : Civil Action No.
: 3:03 CV 0450(DJS)
Plaintiff, :
vs. :
:
BARBERINO BROTHERS, INCORPORATED :
:
Defendant : December 29, 2003

## DEFENDANT'S RESPONSES TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS

1. Please produce all documents identified in response to the foregoing interrogatories, identifying the particular interrogatory or interrogatories with respect to which each document is produced.

**ANSWER:** **Objection. Plaintiff's request is overly broad and vague, and may breach defendant's obligation of employee confidentiality, C.G.S. §31-128f.**

2. Please produce all documents relating to any administrative proceedings that Defendants responded to or attended, in connection with any of the claims asserted in the Complaint of this case.

**ANSWER:** **Please see attached.**

3. Please produce all documents, including applications for all sales personnel hired during the years of 2000 and 2001.

Exh. A

ANSWER: Objection. Material requested is irrelevant, immaterial or not calculated to lead to admissible information, and may breach defendant's obligation of employee confidentiality, C.G.S. §31-128f.

4. Please produce all documents relating to Defendants' three special defenses.

ANSWER: **Please see attached.**

5. Please produce Mike Bosta's resume and/or list his previous employers for the years of 1997 through 2001.

ANSWER: **Document will be produced upon receipt.**

6. Please list and produce copies of all Complaints against Barberino Brothers, Inc., served and filed, from 1998 through 2003 at:

    a) CHRO or EEOC

ANSWER: **Document will be produced upon receipt.**

    b) Connecticut Superior Court

ANSWER: **Document will be produced upon receipt.**

    c) US District Court, District of Connecticut

ANSWER: **Document will be produced upon receipt.**

Respectfully submitted,

THE DEFENDANT
BARBERINO BROTHERS, INCORPORATED

By: _____
Anthony B. Corleto, Esq.  (CT 13520)
CORLETO & ASSOCIATES, P.C.
107 Mill Plain Road, Suite 200
Danbury, CT 06811
(203) 790-7540
Juris No. 412229

3

```
CHRO CASE NO. 0130615              :   COMMISSION ON
                                   :   HUMAN RIGHTS
STEPHEN CESLIK                     :       AND OPPORTUNITIES
            Complainant            :
                                   :
        vs.                        :
                                   :
BARBERINO BROTHERS, INCORPORATED   :
            Respondent             :   August 8, 2001
```

## SCHEDULE A

The respondent Barberino Brothers, Incorporated hereby responds to the CHRO's request for information contained in Employment Schedule A as follows:

### EMPLOYMENT SCHEDULE A
### Request for Information

*In addition to admitting or denying (with documentation) the numbered statements on the affidavit, please provide the following:*

1. State the full legal name of the respondent.

**RESPONSE: Barberino Brothers, Incorporated.**

2. State the proper address of the respondent's facility where the complainant alleges that an act or acts of discrimination occurred.

**RESPONSE: 505 North Colony Road, Wallingford, CT.**

3. If the respondent is incorporated, indicate under what state's laws it is incorporated.

**RESPONSE: Connecticut**

4. If the respondent is incorporated, state the address of



promote, demotion or termination of employment, provide the rate(s) of pay for the position(s) at issue.

RESPONSE: Sales associates are paid minimum wage plus commission. The commission varies depending upon the type of vehicle sold, sales price and financing arrangements. Also see Exhibit "B".

14. If this complaint involves a claim of physical disability, did you make any attempts to reasonably accommodate the disability at issue? If so, please detail them.

RESPONSE: Not Applicable.

15. Provide any other information and/or explanation you deem relevant to this complaint, and any other information which will assist the Commission in reaching a decision in this matter.

RESPONSE: Mr. Leon Gjione, formerly of Colonial Toyota in Milford, CT can be reached at Westport Lexus at 203-255-1531. Mr. Gjione will confirm that he advised Mr. Bosta that Stephen Ceslik was not eligible for re-hire at Colonial Toyota. Accordingly, Mr. Ceslik received a negative recommendation from a previous employer which influenced Mr. Bosta's decision not to hire him at Barberino.

Mr. Bosta has an excellent reputation as an equal opportunity employer. Submitted herein as Exhibit "E" is a letter from Mr. Louis Cumming, age 67. Mr. Bosta hired Mr. Cumming while employed at Colonial Toyota in Milford after Mr. Cumming experienced significant difficulty reentering the work force from semi-retirement.

Before moving to Connecticut in February 2000, Mr. Bosta was employed by Ghassan ("Gus") Merhi of Newport Motors in Las Vegas, Nevada where he was responsible for interviewing, hiring, training and terminating a wide diversity of employees. Mr. Merhi will verify Mr. Bosta's representation that he does not discriminate against potential employees. Mr. Merhi can be reached at (702) 641-8110.

7

STATE OF CONNECTICUT

COMMISSION ON HUMAN RIGHTS AND OPPORTUNITIES

- - - - - - - - - - - - x
STEPHEN CESLIK,                :
    Complainant,    :
                            :   CHRO No. 0130615
vs.                            :
                            :
BARBARINO BROTHERS,            :   May 7, 2002
    Respondent.    :
- - - - - - - - - - - - x

RECEIVED AUG 0 4 2004
LEX.01140T
APC, ARP

FACT FINDING CONFERENCE

(Transcription from Cassette Tape Recording)

Held Before:

    SUSANNE HOM, Investigator

BRANDON REPORTING SERVICE
44 Capitol Avenue
Hartford, CT 06106
860.549.1850

Brandon Smith Reporting

91e72306-00cf-415c-9b84-8daf0aa7867e

Page 68

```
 1      Q.     Okay.
 2      A.     Okay.  Tony D'Lucia is a school teacher by
 3   day.  Only works like part time --
 4      Q.     He's part time in the evenings?
 5      A.     Yeah, kind of like -- yeah, so I don't
 6   really count -- I mean he's an employee of mine but
 7   I --
 8      Q.     (Inaudible) part time, whatever he gets,
 9   he gets; whatever he doesn't --
10      A.     Correct.  And he's been there for many
11   years and it just happens that the owners put him
12   with me.
13      Q.     Okay.  Do you have anything else to add to
14   these allegations of age discrimination?
15      A.     Except or the fact -- who, me?
16      Q.     Yes, you.
17      A.     Except for the fact that when I was at
18   Colonial I hired a gentleman who was 67, I hired a
19   gentleman who was in his late seventies, and I was
20   only there for a very short time.  And previous to
21   that when I left Las Vegas, Nevada I put a gentleman
22   in his mid-sixties in my position, because I was
23   general manager of three stores, I ran three stores.
24   And I spoke with the owner and I said this is the
25   guy for the job and I got him the position to take
```

1  over my position in Las Vegas.

2  And this is many years I've trained many

3  sales people and I've never had a problem like this

4  in my entire life.

5  Q. You've never been accused of age

6  discrimination?

7  A. No.

8  Q. Is there any general tenner by your

9  employer, if not you, to hire people who are younger

10 or not in their sixties or seventies?

11 A. No.

12 THE INVESTIGATOR: So you have any

13 follow-up questions?

14 MR. CESLIK: I do, yes.

15 I guess let me start with is last

16 comment about this fellow --

17 MS. EATON: Excuse me, I'm sorry, but

18 it's my understanding there's no cross

19 examination during these proceedings. And that

20 if there's questions Mr. Ceslik should give them

21 to you and that you should look at them for

22 their relevance and then talk to Mr. Basta about

23 that.

24 THE INVESTIGATOR: Okay.

25 MR. CESLIK: That's what I'm doing,

Page 70

1   I'm talking to you.

2           THE INVESTIGATOR: Okay, fine.

3           MR. CESLIK: He just talked about
4   this Lou Cummings, if I'm saying the name
5   correctly. First of all, what he did at
6   Colonial has nothing to do with working at
7   Barbarino. My complaint is against Barbarino.
8   Who was hired there doesn't matter.

9           Would you ask him what this letter
10  means, why did he issue it to CHRO?

11          THE INVESTIGATOR: Okay. I believe
12  that it speaks for itself. I think --

13          MR. CESLIK: Yeah, it does, but I
14  want to know if they know what it means.

15          THE INVESTIGATOR: What do you mean?

16          MR. CESLIK: Was it written by
17  Nostradamus or Lou Cummings? Look at the date
18  on there, it's August 3rd, 2000.

19          THE INVESTIGATOR: Right.

20          MR. CESLIK: It's eight months before
21  I applied for a job at Barbarino. Why would you
22  have a letter eight months prior?

23          THE INVESTIGATOR: Do you know the --

24          MR. BASTA: He writes the wrong date,
25  the man is -- you know, this gentleman --

```
 1              MS. EATON:  (Inaudible.)
 2              MR. CESLIK:  Yeah, that or this
 3    revelation of --
 4              MS. EATON:  Excuse me.  It just looks
 5    like the last number was changed.  I'm not sure
 6    why, what happened.
 7              MR. CESLIK:  Well, let's get back to
 8    the document speaks for itself.  This is August
 9    3rd, 2000, not what you say it says today, May
10    2nd, 2002.
11              THE INVESTIGATOR:  Okay.
12              MR. CESLIK:  Either that or he had a
13    discrimination problem at Colonial Toyota and
14    that letter was written then for that purpose.
15    One or the other.  It's not what we say today,
16    it's what it says.
17              THE INVESTIGATOR:  Okay.
18              MR. BASTA:  I'd be happy to call Lou
19    Cummings.
20              THE INVESTIGATOR:  That's fine.
21              MR. CESLIK:  But again, who he hired
22    over at Barbarino has nothing to do with what
23    he's doing for -- I'm sorry, at Colonial has
24    nothing to do with Barbarino.  They have
25    different policies.
```

Page 72

1  MR. BASTA: May I say something?

2  THE INVESTIGATOR: Go ahead.

3  MR. BASTA: I think it's relevant in

4  the fact of how I perform my duties as a manager

5  in the car business for over 16 years and how my

6  track record has evolved. That's why I think

7  it's relevant.

8  MR. CESLIK: And just to rebut, what

9  he did in Vegas and Colonial, they have

10 different owners, different policies. When I

11 was at Barbarino they had their policy. That's

12 all I'm saying. Different policies.

13 THE INVESTIGATOR: Okay, he testified

14 to their policy. Okay. Go ahead.

15 MR. CESLIK: I have some questions

16 that I'd like you to ask that you (inaudible).

17 BY THE INVESTIGATOR:

18 Q. What is your work history in Connecticut,

19 Mr. Basta?

20 THE INVESTIGATOR: I think we went

21 through that, didn't we?

22 MS. EATON: Yes, we did, in great

23 length.

24 THE INVESTIGATOR: I think we did.

25 MR. CESLIK: And I think you talked

Page 90

1                           CERTIFICATE

2

3       I hereby certify that the foregoing 89 pages

4   are a complete and accurate transcription to the

5   best of my ability of the electronic sound recording

6   of the FACT FINDING CONFERENCE in re: STEPHEN

7   CESLIK vs. BARBARINO BROTHERS, CHRO No. 0130615,

8   held at the CHRO Offices on May 7, 2002.

9

10

11  /s/ [John C. Brady]                        8/3/04

12  Signature of Transcriber                    Date

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

STEPHEN CESLIK,
:  -Plaintiff

-v-                                          No: 3:03 CV 450 (MRK)

BARBARINO BROTHERS,
:  -Defendant

## MEMORANDUM AND ORDER

Counsel for the defendant has written a letter to the undersigned requesting an adjournment of the settlement conference now scheduled for December 11, 2003, and a conversion of that session into a "pre-motion conference, based on plaintiff's failure to respond to discovery requests." (See Letter from Corleto to Smith of December 3, 2003) Putting aside the irregular mechanism defendant has selected for communicating with the court,[1]

---

[1] See Smith & Rose, Getting in the Last Word: The Impropriety of "Letter Briefs" in State and Federal Courts, 68 Conn. B.J. 294 (1993). Defendant's letter also appears to be a combination "letter brief" and "letter motion." It is dated December 3, 2003, and was received by the court yesterday or today. Because it was not filed with the Clerk of the Court, it is not date stamped and, thus, there is no ready way for the court to know when it was received. There is no certification when, or even whether, it was sent to plaintiff's counsel. It is also unclear whether defendant expects the court to rule on this without allowing plaintiff the opportunity to respond, or whether defendant wants the court to formulate a special truncated briefing schedule. If this were a properly filed motion, the Local Rules would allow plaintiff 21 days to file opposing papers.

defendant's letter raises a few issues that require comment.

First, the court notes that the procedurally correct way to redress discovery recalcitrance is not a letter to the court, but a motion to compel under Rule 37 of the Federal Rules of Civil Procedure. While counsel may believe that a letter is an efficient, "time-saving" device for avoiding the necessity of having to file a motion, normally it is not. Most often, time is actually *wasted* when counsel and judges, in an attempt to "save time," decide to concoct ad hoc civil procedure in the hopes of "cutting to the chase" and "streamlining" the flow of litigation.

> The Federal Rules of Civil Procedure are designed to enable a relatively small judiciary to deal in an orderly way with a virtually limitless number of disputes. Even when parties sedulously comply with the rules of procedure, courts must struggle to keep abreast of their ever-growing dockets. By fashioning their own ad hoc procedure parties do themselves and the court a disservice. In the context of discovery, for example, it is far easier and quicker to make a formal document request pursuant to Rule 34 than it is to construct and articulate an argument why an informal letter should be treated as a Rule 34 request so as to enable it to be enforced under Rule 37. When parties fashion their own procedure, they unwittingly remove their cases from the orderly flow of the litigative stream and, when a dispute later arises, almost invariably consume more than their fair share of judicial time.

68 Conn. B.J. at 299.

How, for example, can courts award attorney's fees and costs to a party that has chosen to proceed by way of a "letter motion" rather a motion under Rule 37? How does a court award drastic

2

sanctions under Rule 37(b) when, because there has never been a Rule 37 motion, there is no underlying Rule 37(a) order? If informal discovery responses are made to informal discovery requests, what form shall they take and, if they are informal, how can they be used to support, or oppose, a later motion for summary judgment? Clearly, it is much easier and more efficient for a party to follow established procedure than it is for counsel and the court to struggle constructing post hoc explanations for procedurally shaky decisions, backfilling unnecessary gaps in the record and hoping that the unfillable holes go unnoticed.

Of course, the situation is somewhat different because here counsel requests a "pre-motion conference," presumably to work out the problems and avoid the burden of filing a Rule 37 motion. This would afford the court an opportunity to wade into the discovery morass at an earlier stage and negotiate the issues on an item-by-item basis, recasting interrogatories here and reformulating document requests there. In theory, this sounds good. But in reality, it is not workable. That is why the judges of this court decided long ago that, before a discovery motion is filed, counsel must have "conferred with opposing counsel and discussed the discovery issues between them in a good faith effort to eliminate or reduce the area of controversy and to arrive at a mutually satisfactory resolution." Rule 37(a)2, Local Rules of Civil

3

Procedure for the District of Connecticut ("Local Rules"). This, of course, is the substance and essence of what used to be know as the "Local Rule 9 Conference" before the Local Rules were recently renumbered. A discovery motion cannot even be properly filed in this district unless moving counsel has *attested by affidavit* that the conference has occurred.[2]

Importantly, it is not the function of the court to "preside over" these discovery conferences. The aim of the conference is to keep the court *out of* discovery disputes until counsel have attempted to resolve their own dispute[3]. That is why Local Rule 37(a)2 makes clear that this "pre-motion conference" is to be conducted "without the intervention of the Court." Id. Therefore, the court declines the invitation to conduct a "pre-filing conference."

With respect to defendant's request to postpone the December

---

[2] That affidavit must be more than a half-hearted, pro forma assertion that counsel have met, but cannot work out their problem. That affidavit must be made in objective good faith. And it must specify the issues that were discussed and those which counsel were unable to resolve. Local Rule 37(a)2.

[3] This is just common sense. Courts have their hands full ruling on motions that are properly pending before them. Courts do not have the luxury of being able to decide discovery disputes that have not even matured into motions. Indeed, not only do courts not have the resources to do this, why should a litigant which has ignored the Federal Rules and Local Rules of Civil Procedure be allowed "to go to the head of the line," edging out competitors for the court's time and enjoying a preference over those who have followed the rules?

4

11, 2003 settlement conference, a few comments are in order. In the court's experience few things are more likely to frustrate meaningful settlement negotiations than a party's unjustifiable noncompliance with reasonable discovery. Lawyers need evidence and information to counsel their clients with regard to settlement. If the plaintiff has indeed stonewalled defendant's requests for information, then the plaintiff has by its recalcitrance doomed the upcoming settlement conference. This is not what competent counsel normally do. Typically, plaintiffs' counsel are eager for an opportunity to demonstrate to defendants that their claims merit prompt and fair treatment. Usually, plaintiffs' counsel demonstrate great alacrity at the prospect of settlement. Thus, if defendant's representations about plaintiff's behavior are true-- and the court has no reason to believe otherwise-- plaintiff's counsel has sabotaged what could have been a golden opportunity.

The settlement conference will go forward as scheduled on December 11, 2003. However, counsel for the plaintiff should carefully consider the assertions made by the defendant and, if they are substantially correct, plaintiff's counsel should immediately notify counsel for the defendant that it concurs in the latter's request for an adjournment of the December 11, 2003 settlement conference. An attorney who feels his or her discovery requests have been ignored or unfairly responded to is

5

understandably unlikely to counsel his or her client to settle. Recalcitrance in discovery does little to put adversary counsel in a settling frame of mind. In the event counsel concur that the settlement conference should be postponed, they will immediately inform the undersigned's chambers.

Dated at Hartford, Connecticut, this 5th day of December 2003.

*Thomas P. Smith*
Thomas P. Smith
United States Magistrate Judge

6