```
 1                UNITED STATES DISTRICT COURT

 2                  DISTRICT OF CONNECTICUT

 3
      * * * * * * * * * * *  * Civil Docket
 4                            *   No. 03CV450(MRK)
      STEPHEN CESLIK,         *
 5              Plaintiff     *
                              * September 13, 2004
 6         vs.                * 1:41 o'clock p.m.
                              *
 7    BARBERINO BROTHERS, INC.,*
                Defendant     *
 8                            *
      * * * * * * * * * * *  *New Haven, Connecticut
 9                   ORAL ARGUMENT

10         BEFORE THE HONORABLE MARK R. KRAVITZ
              UNITED STATES DISTRICT JUDGE
11
      Appearances:
12
      For the Plaintiff:         STEPHEN CESLIK, PRO SE
13                                478 Milford Point Road
                                  Milford, CT 06460
14

15
      For the Defendant:         ANTHONY B. CORLETO, ESQ.
16                                Corleto & Associates
                                  107 Mill Plain Road
17                                Suite 200
                                  Danbury CT 06811-6100
18

19

20
      Court Reporter:            Thea Finkelstein RMR, CRR
21                                141 Church Street
                                  New Haven, CT 06510
22                                203.777.3487

23

24    Proceedings recorded by mechanical stenography, transcript

25    produced by computer.
```

EXH 2
pg. 1

1  THE COURT: You may be seated. Welcome. We are
2  here today in the case of Ceslik versus Barberino Brothers
3  Inc., 03CV450(MRK). Could counsel and the pro se party
4  identify themselves for the record?
5  MR. CESLIK: My name is Stephen Ceslik. I'm pro se
6  in the matter of Ceslik versus Barberino.
7  THE COURT: Good afternoon, Mr. Ceslik.
8  MR. CORLETO: Anthony Corleto, Corleto & Associates.
9  THE COURT: Good afternoon to you as well. We are
10 here today primarily on Mr. Ceslik's motion to disqualify,
11 document No. 42, although I do want to talk to Mr. Ceslik, I
12 may want to talk to him about his motion for contempt which
13 was recently filed, document 54, as well.
14 Mr. Ceslik, the way I do arguments on motions is
15 that I really proceed with a series of questions that I ask of
16 both parties, that I may have of both parties, and then I'll
17 give you a chance or either side a chance to say something
18 else.
19 I've read all the papers that you've submitted and
20 looked at the exhibits and also looked at the case law, so I
21 guess I'll start with you.
22 In this motion to disqualify, which is actually more
23 than a motion to disqualify, you are also asking for, in your
24 latest papers, a default against the defendant; you want
25 expenses for the plaintiff; and to disqualify the Corleto law

1  lawsuit is against Barberino, it's not against Mr. Corleto --
2  hear me out for a second -- and Corleto and his firm didn't
3  actually make the decision to not hire you, okay?
4       So what you need to show is that the decision maker
5  for the decision not to hire you, who perhaps was Mr. Bosta,
6  we'll find out what the evidence is on that, that he was lying
7  or is lying when he says, if he does say, that the real reason
8  he didn't hire you was he didn't like you for whatever reason
9  and you want to show that that was false and so the way you do
10 it is to show that perhaps he's lied, perhaps he's made
11 inconsistent statements so that the jury disbelieves him and
12 then perhaps that, combined with whatever other evidence you
13 have, might be, as in the case of Reeves, sufficient to permit
14 the jury to conclude that the real reason that you didn't get
15 the job was really age discrimination and not something else.
16      But that's about Mr. Bosco and Barberino, it's not
17 about the lawyers that they have because otherwise, just think
18 of this, in every single case that comes here, one party or
19 the other could say the employee of the party is lying and you
20 know what? He didn't think that lie up himself, I bet his
21 lawyer put him up to that, and I'm going to put the lawyer on
22 the stand to show that what the person did was a lie.
23      And if we were to permit that, again, I submit to
24 you that the cases would turn into cases against the lawyers
25 and not against the parties. Which is not to say if a lawyer

pg. 5

1  encourages someone to lie, they shouldn't be disciplined for
2  it but we have a disciplinary process and it exists in the
3  state and federal system.
4         Now, you say, you quite rightly mention and point
5  out, that we here in Connecticut District Court have a rule
6  that proscribes an attorney from continuing in a case if he or
7  she is going to be a witness in the case, but we need to make
8  sure that -- this is not to say that you are doing this at
9  all -- we have to make sure that people don't kind of use that
10 rule to get rid of lawyers who are representing the other
11 side.
12        Let's put it a different way.  If you were being
13 represented by an attorney in this case right now, presumably
14 you would be not happy if Mr. Corleto said, you know, I know
15 how you get rid of that attorney for Ceslik, I'll say that I
16 want to call him as a witness because he's been coaching
17 Ceslik to say certain things on the stand and then once I put
18 him down on my witness list, he won't be able to represent
19 Ceslik anymore and Ceslik will be out and he will have to
20 represent himself pro se.  You wouldn't like that presumably,
21 either, right?
22        And again, it's really all about trying to maintain
23 our focus.  I want to maintain my focus on your lawsuit
24 against Barberino and then if you have charges against Mr.
25 Corleto or Mr. McDermott or anything else, if you take those

Pg. 6

```
 1   to a disciplinary committee, they'll keep their focus on that.
 2   They're not going to focus on the Barberino case. That's in
 3   my lap. That's the concern I have about the motion.
 4          I've read all the papers but it seemed to me that
 5   what you were really, the crux of your complaint is that
 6   people are lying about why they didn't hire you and are doing
 7   things and are making false statements about why you weren't
 8   hired or what Mr. Bosco did or didn't say, but that's what we
 9   are going to have a trial about and the jury will decide
10   whether Mr. Bosta is lying or not, right?
11          MR. CESLIK: It goes farther than that. This isn't
12   a case where the attorney for Barberino is advocating their
13   story; this is a case where the attorney has partaken in the
14   criminal conduct and unethical conduct that I've outlined in
15   my motions.
16          THE COURT: I saw that but your evidence -- but the
17   criminal conduct is all, as I understand that you are arguing
18   about, really is after you don't get hired, right? You don't
19   get hired --
20          MR. CESLIK: Yes.
21          THE COURT: Then you bring a complaint before the
22   Commission on Human Rights and Opportunities and they release
23   jurisdiction, they permitted you to sue in this court so you
24   can establish your claim that Barberino violated your federal
25   rights.
```

pg. 7

```
 1  it would be a rare case indeed where the only way that
 2  somebody could show that a witness was lying was by putting
 3  the witness's lawyer on the stand.  Usually there are other
 4  ways of doing it, documents, tape-recorders, you have all
 5  sorts of ways of showing not that Mr. Corleto's lying, because
 6  the jury couldn't care less about Mr. Corleto; but that
 7  Barberino has been lying and if they conclude that Barberino's
 8  lying, then you have a chance, if you have other evidence, of
 9  convincing them, under Reeves versus Sanderson, the reasons
10  they did what they did were age discrimination and you are
11  keeping your eye on the ball, which is age discrimination.
12          And then if you have disciplinary arguments against
13  Mr. McDermott or Corleto or Ms. Eaton or anyone else, those
14  can be pursued in another forum where the focus isn't this age
15  discrimination case.  That's all I'm saying.
16          MR. CESLIK:  But isn't it a crime to give this Court
17  knowingly a transcript that you have altered and say I'm going
18  to use this as evidence to knock his case out?  The statute
19  that I believe I read years ago is called forgery.
20          THE COURT:  Right, and the thing about it is,
21  though, two things about it, you say isn't it a crime to alter
22  it, A; and B, and then submit it to this Court to get the case
23  knocked out?
24          MR. CESLIK:  As evidence, that's what he submitted
25  it for.
```

pg.12

1  charge of violation of professional ethics, whether it's good,
2  bad or indifferent, the charge, and that in and of itself will
3  require disqualification of the counsel and then the ethic
4  rules become not disciplinary rules but they become part of
5  the tactics that people use in litigation and the court, the
6  Second Circuit, said:
7      Listen, district judges, we don't want that to
8  happen and so it's only if, under rare circumstances, where
9  the attorney's conduct somehow will result in a fraud on the
10 court and the jury in the underlying case, that a court can
11 consider it but it doesn't have to do it.
12     In fact, the Second Circuit says the better -- this
13 is a quote from the Second Circuit in a case called <u>Bottaro</u>
14 <u>versus Hatton</u>, the remedy for unethical conduct is the
15 disciplinary machinery of the state and federal systems.
16 That's what they say in that case and I think it's because
17 they want to keep my eye on your age discrimination case and
18 not get it deflected with these other things.
19     So I'm not saying that, you know, you shouldn't
20 pursue or don't have a basis for pursuing -- I'm not going to
21 make a judgment about that -- violations of professional
22 ethics; I'm just saying this is the wrong forum to be
23 presenting it.
24     Think about this, Mr. Ceslik, too: We could have
25 had the trial of your case already had this all not come up.

Pg.16

```
 1   investigating those complaints, looking at them, and they make
 2   recommendations to the court.
 3          And there's a process that you go through and that
 4   process protects all sides, and it also ensures that this case
 5   doesn't get essentially taken over by something that may well
 6   be very serious but which shouldn't deflect our attention, and
 7   that's where I am.
 8          I think, too, that ultimately, as I went through
 9   your 18 lies, I went through each one of them, ultimately
10   you've put forward proof of those lies, okay?  You have your
11   proof of them and if a jury agrees with you on those lies,
12   then you are going to win this case, maybe, depending upon
13   what the other evidence is and that's what we ought to be
14   focusing on.
15          And I don't see how -- I don't believe it's
16   necessary for you to call Ms. Eaton or Mr. Corleto to make out
17   those fabrications that you believe help your case.
18          I'll hear from Mr. Corleto briefly and then I'll
19   come back to you, Mr. Ceslik, but that's my concern.  I want
20   to keep our focus on your underlying action in this case and
21   then if you have other complaints to pursue, pursue them in an
22   appropriate forum.
23          Mr. Corleto, I just had a couple of questions.  In
24   terms of Brandon, the transcript that was made, is that the
25   transcript that you made -- that's not an official transcript,
```

pg.18

1  is it?

2  MR. CORLETO: It's not, your Honor. We never
3  represented it to be such. We did it for the convenience of
4  the Court and Mr. Ceslik so there would be something in
5  writing.

6  THE COURT: The only official, in effect,
7  recordation of that hearing, to the extent it's useful at all,
8  is the tape-recording?

9  MR. CORLETO: That is the only contemporaneous
10 reporting made.

11 THE COURT: Let's say Mr. Ceslik wishes to use, for
12 instance, a witness's, Mr. Bosta's testimony before the
13 investigator, Ms. Hom is it?

14 MR. CORLETO: Correct.

15 THE COURT: To impeach his testimony on the witness
16 stand. How would he do that? With a tape-recording?

17 MR. CORLETO: The CHRO are not always sworn
18 testimony. They're frequently informal exchanges.

19 THE COURT: I couldn't see if this was under oath.

20 MR. CESLIK: It was under oath. It says so in the
21 transcript he gave you, too.

22 THE COURT: I wonder whether or not -- I looked at
23 many of the changes, the emendations, and they seemed -- I
24 don't mean to suggest that they're -- to minimize them in any
25 way but they didn't seem major, many of them were, you know,

```
 1  CHR versus CHRO, and I wonder whether there could be an agreed
 2  upon transcript or whether that's not possible.
 3          MR. CORLETO:  If I may address your Honor's
 4  observation about the changes, so to speak, from what I could
 5  see, it's the typical transcription type errors one would see
 6  given even the highest level of professional competence in
 7  transcription.
 8          THE COURT:  Not my court reporter.
 9          MR. CORLETO:  No, your Honor.  I'm not sure that it
10  would be a protective exercise because much of what Mr. Ceslik
11  raises as changes are things that would never appear in a
12  transcript, such as Mr. Ceslik says in one instance, there was
13  laughter and the laughter was not transcribed, we never see
14  laughter transcribed in an official transcript.
15          THE COURT:  There are some of them that way but
16  others, there are others where there's -- may or may not
17  change the meaning of things but there's a difference in the
18  wording of statements and I wondered whether at least with
19  respect to some of those, if the transcriber and his
20  transcriber could see eye to eye so we can get an agreed upon
21  transcript at the trial.
22          MR. CORLETO:  I'm not sure, your Honor.  I don't
23  mean to sound evasive in any way.  Ordinarily the transcript
24  would not be made and I think that if we were to have a
25  transcript, it should be made by an official for evidentiary
```

pg.20

```
 1          THE COURT:  Maybe he should have stated it
 2  differently, which is to say -- wait a minute -- in his
 3  affidavit that I received from this court reporting service a
 4  transcript that they have certified is true and accurate as
 5  opposed to him saying that it is true and accurate, but
 6  believe me, the Court understands when it gets that from Mr.
 7  Corleto that he's not certifying the accuracy of it.  All he's
 8  doing is saying, I went out and hired a court reporting
 9  service and they're saying it's accurate.
10          MR. CORLETO:  That's exactly, your Honor, simply
11  chain of custody, we took the tapes as Mr. Ceslik produced
12  them, we took them to a reporter, asked them to transcribe
13  them as best they could, not having been at the proceedings
14  but based on the tape-recordings themselves and all we've done
15  is given a transcription.
16          THE COURT:  Was it Ms. Eaton at the CHRO hearing or
17  you?
18          MR. CORLETO:  Correct, Ms. Eaton.
19          MR. CESLIK:  He did not get that tape-recording from
20  me to get that transcript; he states he got it from CHRO.
21          One last point, I couldn't get one for over
22  two-and-a-half years, it was inaudible.  That's why he doesn't
23  show the tape-recording.  That's my last point.
24          THE COURT:  Okay, Mr. Ceslik, I appreciate that.  I
25  appreciate this.
```

pg.23

```
 1          Listen, let me say I've carefully considered the
 2  motion to disqualify, document No. 42, and the relief
 3  requested.  I am going to deny the motion to disqualify.  I
 4  believe that certainly Mr. Ceslik has leveled very serious,
 5  very serious, charges against Mr. Corleto and his law firm but
 6  I take the point of the Second Circuit in WT Grant and in
 7  Bottaro that, in almost all instances, the proper place for
 8  those disciplinary allegations to be fought out is the
 9  disciplinary machinery of the state and the federal bars and
10  not in this case in the underlying litigation.
11          So I will not grant the motion to default, not award
12  expenses and not disqualify the Corleto law firm.
13          In terms of the request to have Ms. Eaton and Mr.
14  Corleto testify, at least based on the submissions I've
15  received to date, it does not seem to me that their testimony
16  is essential.  That is to say that I believe Mr. Ceslik can
17  prove his allegations of deception and pretext through other
18  means.
19          And again, so as not to allow the disqualification
20  of counsel to become a sword that's used in litigation to deny
21  clients of their right to counsel of their own choosing, I
22  will not disqualify the Corleto law firm because I believe
23  that they are likely to be witnesses because I would not
24  permit them to be called as witnesses based on the current
25  submissions because I think it would be unnecessary,
```

1  memorandum.
2           I'm not going to set the trial date, though, the
3  final pretrial, until I get your joint trial memorandum, okay?
4  So we are going to work it that way.
5           Any further business I need to take up in this case
6  right now?  Okay.  I thank you both for coming today, okay?
7           (2:31 o'clock p.m.)

### COURT REPORTER'S TRANSCRIPT CERTIFICATE

I hereby certify that the within
and foregoing is a true and correct transcript
taken from the proceedings in the above-entitled
matter.

*[signature]*

Official Court Reporter

Dated: 11/8/2004

PJ.33

# Brandon Smith Reporting Service, LLC

44 Capitol Ave.
Hartford, CT 06106
860-549-1850
Tax ID # 06-144-8649

# Invoice

| DATE | INVOICE # |
|---|---|
| 8/2/2004 | 966060 |

**BILL TO**
Corleto & Associates P.C.
Christopher Medve, Paralegal
107 Mill Plain Road
Suite 200
Danbury, Ct. 06811-6100

**SHIP TO**

| P.O. NO. | TERMS | PROJECT |
|---|---|---|
|  | Net 30 |  |

| QUANTITY | DESCRIPTION | RATE | AMOUNT |
|---|---|---|---|
| 94 | Transcript pages: CHRO Hearing Stephen Ceslik vs. Barberino Brothers 5/7/02 | 4.00 | 376.00T |
|  | Shipping and Handling - fed ex | 25.00 | 25.00T |
|  | Sales Tax | 6.00% | 24.06 |

**Total** $425.06

We accept Mastercard, Visa, American Express.

EXH 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| STEPHEN CESLIK, | : Civil Action No. |
| Plaintiff, | : 3:03 CV 0450(DJS) |
| vs. | : |
| BARBERINO BROTHERS, INCORPORATED | : |
| Defendant | : August 10, 2004 |

**AFFIDAVIT OF ANTHONY B. CORLETO**

State of Connecticut:
                    ss
County of Fairfield :

ANTHONY B. CORLETO, being duly sworn, deposes and says as follows:

1. I am a member of the firm Corleto & Associates, P.C., attorneys for defendant Barberino Brothers. I submit this affidavit in opposition to plaintiff's motion to disqualify this firm as counsel.

2. Annexed hereto as Exhibit "A" is a true and accurate copy of plaintiff's former counsel, Leonard McDermott, motion to withdraw as counsel. At paragraph 1, Mr. McDermott describes Mr. Ceslik's tactics as "repugnant and imprudent".

3. Annexed hereto as Exhibit "B" is a true and accurate transcript of the May 7, 2002 CHRO fact finding conference, with correspondence about the transcript's creation.

EXH. 4

4. Annexed hereto as Exhibit "C" is a true and accurate copy of defendant's August 8, 2001 Response to the CHRO Schedule A.

5. Annexed hereto as Exhibit "D" is a true and accurate copy of the April 9, 2004 transcript of Stephen Ceslik's deposition in this case. At page 63-66, he testifies that he dismissed his counsel in a prior suit against a former business associate. At pages 58-62, he testifies about a complaint that he filed with the Attorney General's office against inter alia, CHRO investigator Roxanne Sinclair, in connection with an administrative complaint that Mr. Ceslik filed against his former employer, Napoli Motors.

6. Annexed hereto as Exhibit "E" is a true and accurate transcript of a April 13, 2001 telephone conversation between Mr. Bosta and plaintiff.

7. Annexed hereto as Exhibit "F" is a true and accurate copy of defendant's August 8, 2001 response to the CHRO complaint.

8. As more fully set forth in the defendant's Memorandum in Opposition, it is respectfully requested that an Order be entered denying plaintiff's motion.

_____
Anthony B. Corleto

Sworn before me this 10 day of August, 2004.

_____
~~Notary Public~~
Commissioner of the Court

T:\Lex0114CT\suit\pld.27.wpd

2

See court file for tape recording of May 7, 2002 CHRO Hearing.

Exh 5